UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                      Plaintiff,

                      v.

MARQUIS CRAWFORD,

                      Defendant.

DECISION & ORDER and
REPORT & RECOMMENDATION

05-CR-6025L

---

**PRELIMINARY STATEMENT**

By Order of Hon. David G. Larimer, United States District Judge, dated February 14, 2005, all pre-trial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 3).

Defendant Marquis Crawford ("Crawford") is charged in a three-count indictment with possession of narcotics and firearms.  Specifically, the first count charges Crawford with possessing in excess of five grams of cocaine base, in violation of 21 U.S.C. § 844(a).  The second count charges Crawford with possessing with intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  The final count charges Crawford with possessing two firearms in furtherance of the drug trafficking crimes charged in the previous two counts, in violation of 18 U.S.C. § 924(c).  (Docket # 1).  Each count alleges that the charged offense occurred on or about December 28, 2004.  (Docket # 1).

Currently pending before this Court for report and recommendation is Crawford's motion to suppress tangible evidence seized from his apartment at 895 Woodbine Avenue, or in

the alternative for a hearing pursuant *Franks v. Delaware*, 438 U.S. 154 (1978). Also before the Court for decision and order is Crawford's motion for disclosure of the identity of the government's confidential informant. (Docket # 22).[1]

## REPORT AND RECOMMENDATION

Crawford moves to suppress evidence seized from his residence at 895 Woodbine Avenue pursuant to the execution of a search warrant issued by Monroe County Court Judge Richard A. Keenan. According to Crawford, the affidavit offered in support of the warrant failed to establish probable cause because it was based upon false information provided by a confidential informant. (Docket ## 22, 31). The government opposes Crawford's motion, claiming that the search warrant was properly issued. (Docket # 23).

**A. Probable Cause:** The Fourth Amendment to the Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see also* Fed. R. Crim. P. 41.

In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court affirmed the "totality of the circumstances" test to determine whether a search warrant satisfies the Fourth Amendment's probable cause requirement. The issuing judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him,

---

[1] Crawford's omnibus motions also sought, *inter alia*, discovery and inspection pursuant to Rule 16 of the Federal Rules of Criminal Procedure, *Jencks* material, *Brady* material, rulings on evidentiary matters under Rules 404, 608 and 609 of the Federal Rules of Evidence, suppression of statements and inspection of the grand jury list. (Docket # 22). Each of these requests was either resolved by the parties or decided in open court by the undersigned on December 20, 2005. (Docket ## 32, 33).

including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. This Court, as a reviewing court, must determine merely whether the issuing judge had a "'substantial basis for... conclud[ing]' that probable cause existed." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Gates*, 462 U.S. at 238-39) (internal quotation omitted).

The parties have submitted for review the affidavit of Shaun Welch, a police officer with the Webster Police Department, that was presented to Judge Keenan in support of the search warrant. (Affidavit of Shaun Welch, sworn to on December 21, 2004 ("Welch Aff.")). According to the affidavit, on August 30, 2004, a confidential informant ("CI")[2] contacted Deputy James Canfield of the Monroe County Sheriff's Office and provided information to him concerning an individual named Shawn Davis, a black male in his mid-twenties. (Welch Aff. at 3). The CI reported that the previous weekend Davis had told him to telephone Davis at (585) 309-1198 if he wanted to purchase a "hundred," which the CI understood to mean a $100 quantity of cocaine. The CI further advised Deputy Canfield that Davis had been driving a gray Saab with a New York registration number CXK5721 when they met. (Welch Aff. at 3-4).

On September 8, 2004, Welch and Canfield met with the CI and presented him with a photograph of Shawn Davis, which the informant positively identified. (Welch Aff. at 4). The informant then placed a controlled telephone call to Davis's telephone number. After a brief conversation, the CI reported to the agents that Davis had agreed to meet with him at the

---

[2] For ease of reading, this Court will use the male pronoun to refer to the confidential informant, although the government has not identified the gender of the informant.

intersection of Raeburn Street and Thurston Avenue in order to sell him a "hundred." (Welch Aff. at 4).

At approximately 10:21 a.m., Canfield searched the CI to ensure that he did not possess any contraband. The agents then provided the CI with $100 in cash and followed him to the intersection of Raeburn Street and Thurston Avenue. Davis arrived at approximately 10:35 a.m., driving a gray Saab, registration number CXK5721. The officers observed Davis exit the Saab, approach the CI's car and get into it. Approximately five minutes later, Davis exited the CI's vehicle, returned to the Saab and left the area. (Welch Aff. at 4).

Shortly after he met with Davis, the CI met with the agents and produced a small clear plastic bag containing three white rock-like substances (later determined to be cocaine), as well as five dollars in cash. The CI reported that Davis had arrived in a Saab and had parked on Raeburn Street. According to the CI, Davis had exited the Saab and had entered the passenger side of his vehicle. After a brief conversation, Davis had sold the CI the bag containing the white rock-like substances for $95. The CI stated that he had provided Davis with $100 in exchange for the narcotics and had received $5 in return. (Welch Aff. at 4-5).

The CI contacted Welch again on November 12, 2004. On that day, the CI reported that he had observed Davis operating another vehicle, a blue 1994 Ford Explorer bearing New York registration CZZ6405. The CI further stated that Davis resided in the downstairs apartment at 895 Woodbine Avenue. (Welch Aff. at 5). Following receipt of this information, Welch and other law enforcement agents conducted surveillance of 895 Woodbine Avenue. At various times between November 15 and November 29, 2004, Welch observed a 1994 Ford Explorer bearing New York registration CZZ6504 parked in the rear of that address.

(Welch Aff.). Indeed, according to Welch, on November 28, 2004, at approximately 2:30 p.m., Deputy Mike Hogan of the Monroe County Sheriff's Office observed Davis leave 895 Woodbine Avenue in the Ford Explorer. (Welch Aff. at 5).

On December 2, 2004, at approximately 3:30 p.m., Welch and Hogan met with the CI in order to attempt to purchase cocaine from the downstairs apartment at 895 Woodbine Avenue. (Welch Aff. at 5-6). The agents searched the CI and his vehicle to ensure that he did not possess any contraband. Finding none, the CI was equipped with a transmitting device, which allowed the agents to overhear and monitor his conversations. The agents then provided the CI with $100 in cash, followed the CI to the area of 895 Woodbine Avenue and observed him pull into the driveway of that address. The CI was met in the driveway by a black male wearing a green jacket and blue jeans. After a brief conversation between the two, at approximately 3:50 p.m., the CI and the black male entered the back door of 895 Woodbine Avenue. Three minutes later, the CI and the same male re-emerged from the residence and had another brief conversation in the driveway. At 3:56 p.m., the CI left the location and met the agents at an undisclosed location, where the CI provided Welch with a clear plastic bag containing cocaine. (Welch Aff. at 6).

The CI reported to Welch that he had met a black male in the driveway at 895 Woodbine Avenue. The CI identified the male as Marquis Crawford and stated that Crawford resided with Davis in the downstairs apartment at 895 Woodbine Avenue. The CI further reported that he and Crawford had a conversation in the driveway about cocaine, after which Crawford invited the CI into the downstairs apartment, where he sold the CI a small plastic bag containing cocaine for $100. After he received the cocaine, the CI and Crawford exited 895

5

Woodbine Avenue and had a brief conversation in the driveway. Welch further affirmed that he was able to overhear the conversation between the CI and Crawford through the transmitting device and that it was consistent with the CI's report. (Welch Aff. at 6).

On December 6, 2004, Welch received another telephone call from the CI, who reported that he had been in the downstairs apartment at 895 Woodbine Avenue on two occasions since the December 2nd controlled purchase. The first visit had occurred later on the day of the previous cocaine purchase, December 2, 2004. On that day, the CI advised, he had returned to 895 Woodbine Avenue to help Crawford repair his car. While he was there, the CI had observed Davis return to the residence driving the gray Saab. According to the CI, Davis had parked his Saab in the driveway at 895 Woodbine Avenue and had entered the downstairs apartment through the rear door. The second visit had occurred on December 5, 2004, at which time the CI had observed a black-colored AR-15 assault rifle and a black-colored semi-automatic .45 caliber handgun on the floor of the dining room. The CI specifically stated that the assault rifle was not loaded, but that he was unsure about the handgun. (Welch Aff. at 7).

In his affidavit, Welch described a final telephone call he received from the CI on December 17, 2004. During that call, the CI indicated to Welch that he had been in the downstairs apartment at 895 Woodbine Avenue the previous day between 9:30 p.m. and 12:45 a.m., at which time he had observed approximately ten "eightballs" of cocaine, two handguns and an assault rifle in the dining room area of the apartment. (Welch Aff. at 7).

Welch's affidavit disclosed that the CI was a contract informant who was "working off a felony drug charge." According to Welch, the CI previously had provided information to investigators relating to the "Thurston Zoo Crew," which had been corroborated

by law enforcement. Welch also affirmed that he had conducted a Rochester Gas and Electric records check and had determined that since November 3, 2004, service to the downstairs apartment of 895 Woodbine Avenue was registered to Marquis Crawford. (Welch Aff. at 7-8).

In support of his motion to suppress, Crawford has submitted an affidavit challenging the accuracy of the information provided by the confidential informant.[3] (Affidavit of Marquis Crawford, sworn to on December 5, 2005 ("Crawford Aff.")). Specifically, Crawford denies that he ever sold narcotics "while at" 895 Woodbine Avenue or discussed such a sale with the CI on December 2, 2004. (Crawford Aff., ¶¶ 9-13). Crawford further asserts that no one, including the CI, assisted him in repairing his car on December 2, 2004. (Crawford Aff., ¶ 14).

Crawford's attorney also has submitted an affidavit describing his investigation of 895 Woodbine Avenue. (Affidavit of Charles Schiano, Esq., sworn to on December 15, 2005 ("Schiano Aff.")). According to his investigation, "there is no way that anyone parked on Woodbine Avenue can see the rear door of 895 Woodbine Avenue," thus refuting Welch's assertion in his affidavit that he observed the CI and Crawford enter and exit the back door on December 2, 2004. (Schiano Aff., ¶¶ 7-9). At oral argument, Crawford produced photographs purporting to demonstrate his conclusion. On the basis of the allegations contained in these affidavits, Crawford moves for suppression of the evidence seized pursuant to the warrant or, in the alternative, for a *Franks* hearing.

Under the Supreme Court's holding in *Franks v. Delaware*, "a district court may not admit evidence seized pursuant to a warrant if the warrant was based on materially false and misleading information." *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987) (citing

---

[3] The affidavit also establishes Crawford's standing to challenge the warrant. (Crawford Aff., ¶¶ 3-7).

*Franks v. Delaware*, 438 U.S. at 154), *cert. denied*, 507 U.S. 954 (1993). To warrant a *Franks* hearing, a defendant challenging an affidavit must make "a substantial preliminary showing that (1) the affidavit contained false statements made knowingly or intentionally, or with reckless disregard for the truth; and (2) the challenged statements or omissions were necessary to the Magistrate's probable cause finding." *Id.* (citing *Franks*, 438 U.S. at 171-72) (internal quotation omitted). A hearing is required if the defendant provides the court with a sufficient basis upon which to doubt the truth of the affidavit at issue. As the Supreme Court has explained:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Franks*, 438 U.S. at 171.

A *Franks* hearing is not required where it is sought merely on the basis of an allegation that the information in the search warrant affidavit subsequently proved to be inaccurate, especially where that information derives from a source independent of the affiant. *See id.* ("[t]he deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant"); *United States v. Wapnick*, 60 F.3d 948, 956 (2d Cir. 1995) (defendant not entitled to *Franks* hearing based upon showing that informant knowingly or recklessly made false statement to affiant as long as affiant in good faith represented what the informant said), *cert. denied*, 517 U.S. 1187 (1996); *United States v. Cook*,

348 F. Supp. 2d 22, 29-30 (S.D.N.Y. 2004) (denying *Franks* hearing based upon argument that informant had provided false information because defendant had not demonstrated that affiant made false statement or acted with reckless disregard for truth); *United States v. Hennings*, 1997 WL 714250, *6 (W.D.N.Y. 1997) (rejecting motion for *Franks* hearing based upon assertion that confidential informant had not provided a truthful report because "an attack on the informant's statements is permitted only for the purpose of demonstrating misstatements made by the government").

Although the Second Circuit has not precisely defined the level of proof necessary to establish reckless disregard for the truth, *see United States v. Kunen*, 323 F. Supp. 2d 390, 395 (E.D.N.Y. 2004), other courts have articulated the appropriate test as "whether, viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his (or her) statements or had obvious reasons to doubt the accuracy of the information he (or she) reported." *United States v. Schmitz*, 181 F.3d 981, 986-87 (8th Cir. 1999) (citations omitted); *see also Lippay v. Christos*, 996 F.2d 1490, 1500-01 (3d Cir. 1993); *Salmon v. Schwarz*, 948 F.2d 1131, 1140 (10th Cir. 1991); *United States v. A Residence Located at 218 Third Street, New Glarus, Wis.*, 805 F.2d 256, 258 (7th Cir. 1986); *United States v. Kirk*, 781 F.2d 1498, 1503 (11th Cir. 1986).

Here, although Crawford asserts that the information provided by the confidential informant was incorrect, he has not submitted any evidence to suggest that Welch was aware of the alleged falsity at the time he drafted the affidavit or that he disregarded obvious reasons to doubt the accuracy of the information provided by the informant.  *See United States v. Markey*, 131 F. Supp. 2d 316, 324 (D. Conn. 2001) ("*Franks* is implicated only when the false statement

is made by, or the reckless disregard is that of, the affiant. There is no right to a hearing when the challenge is to information provided by an informant or other source."). To the contrary, Welch's affidavit described the bases for his belief that the CI's information was reliable. First, Welch explained his knowledge that the confidential informant previously had provided information concerning a criminal organization that had proved to be reliable. Moreover, Welch's affidavit outlined information provided by the informant about Shawn Davis that he later corroborated through his own observations. For example, when the confidential informant first contacted the agents about Davis, he reported that Davis had offered to sell him a "hundred" and that he drove a gray Saab, specifically identifying the license on the car. A few days later, the informant contacted Davis and agreed to sell him a "hundred." Welch then observed Davis arrive at the agreed-upon location, driving a gray Saab with the license plate the CI had identified. After the meeting between the informant and Davis, the informant surrendered a package of cocaine and $5 in change from the $100 provided to him by the agents.

      Not long thereafter, the confidential informant informed Welch that Davis resided at 895 Woodbine Avenue and was also driving a blue Ford Explorer. Welch confirmed this information by observing a blue Ford Explorer parked at 895 Woodbine Avenue on multiple occasions. In fact, he also learned that another agent had observed Davis leave 895 Woodbine in the Explorer.

      During the second controlled purchase of narcotics described in the warrant, the confidential informant was equipped with a listening device so that the agents could monitor the informant's conversations. According to Welch's affidavit, the informant's report following the purchase was consistent with the conversations Welch overheard.

Crawford has offered no evidence to suggest, nor has he even argued, that Welch's representations about the CI's information or reliability was knowingly false. Nor has he come forward with any facts to suggest that Welch should have doubted the accuracy of the CI's information or veracity. Rather, Welch's affidavit details the adequate and ample basis he had for crediting the informant's representations. *See United States v. Campino*, 890 F.2d 588, 592 (2d Cir. 1989) ("*Franks* does not require that all statements in an affidavit be true; it simply requires that the statements be 'believed or appropriately accepted by the affiant as true'") (quoting *Franks v. Delaware*, 438 U.S. at 165), *cert. denied*, 498 U.S. 866 (1990).

        I also reject Crawford's contention that the photographs of 895 Woodbine Avenue – which he argues demonstrate that from his surveillance point on Woodbine Avenue, Welch could not have actually seen the CI and Crawford enter and exit the rear door of the residence – justify suppression or a *Franks* hearing. Even accepting that the photographs prove that proposition, they do not warrant the relief requested. Welch's affidavit makes clear that he parked his car in a position so that he was able to observe the CI meet with Crawford in the driveway. His affidavit also makes clear that he was monitoring the CI's conversations with Crawford as they were occurring and determined that they were consistent with the CI's later report to him; those conversations apparently included an invitation by Crawford to the CI to accompany him inside 875 Woodbine Avenue. To the extent that Welch's affidavit can be read to assert that he observed the CI and Crawford enter the back door – rather than that he simply concluded that they had entered the back door based upon the conversations he overheard and the fact that they left the driveway – I find that such error was inadvertent and unnecessary to a finding of probable cause for the warrant. *See United States v. Levasseur*, 816 F.2d at 43

(challenged statement must have been both intentionally or recklessly false and necessary to finding of probable cause) (emphasis added). Accordingly, I find that Crawford has failed to satisfy the showing necessary to warrant a *Franks* hearing.

Having found no basis to question the veracity of Welch's representations in his affidavit, I further find that the search warrant signed by Judge Keenan for 895 Woodbine Avenue was supported by probable cause. In sum, the affidavit described a controlled purchase of cocaine from that residence, as well as the observations by an apparently reliable informant that he observed narcotics and several firearms in the residence within days of the application for the warrant. Those assertions adequately established probable cause for the warrant, and this Court thus recommends denial of Crawford's motion to suppress.[4]

**B. Good Faith Exception:** Even if this Court were to find that the information offered in support of the search warrant failed to establish probable cause, the *Leon* good faith exception nonetheless necessitates the denial of Crawford's motion to suppress. *See United States v. Cancelmo*, 64 F.3d 804, 807 (2d Cir. 1995) (citing *United States v. Moore*, 968 F.2d 216, 222 (2d Cir.), *cert. denied*, 506 U.S. 980 (1992); *United States v. Fama*, 758 F.2d 834, 835 (2d Cir. 1985)).

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court held that the Fourth Amendment exclusionary rule should not be applied to evidence obtained by a police

---

[4] At oral argument, Crawford suggested that the CI may have mistakenly identified Crawford, rather than Davis, as the individual who sold him the cocaine on December 2, 2004. Whether the informant's identification was mistaken is legally irrelevant. The question before Judge Keenan was simply whether there was probable cause to believe that evidence of narcotics trafficking would be found at 895 Woodbine Avenue. *See Illinois v. Gates*, 462 U.S. at 238 (must find a fair probability that contraband will be found in a particular place); *see also United States v. Smith*, 9 F.3d at 1012 (reviewing court must determine that issuing judge had a "'substantial basis for... conclud[ing]' that probable cause existed").

officer whose reliance on a search warrant issued by a neutral magistrate was based on "objective good faith," even though the warrant itself might ultimately be found to be defective. *Id.* at 918-23; *United States v. Salameh*, 152 F.3d 88, 114 (2d Cir. 1998), *cert. denied*, 525 U.S. 1112 (1999); *United States v. Benedict*, 104 F. Supp. 2d 175, 182 (W.D.N.Y. 2000). The rationale underlying this good-faith exception is that the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." *Leon*, 468 U.S. at 919.

In this case, Crawford has failed to demonstrate the existence of any of the four circumstances identified in *Leon* which would render reliance on a warrant objectively unreasonable. Specifically, Crawford has not claimed that Judge Keenan abandoned his neutral role, or that the warrant was deficient on its face. Also, for the reasons discussed above, I find that Welch's affidavit was not knowingly misleading, nor was the warrant so lacking in probable cause as to render reliance upon it unreasonable.

Thus, even if probable cause for the warrant had been wanting, the sworn assertions in Welch's affidavit, "viewed in their totality, . . . [were] fully consistent with an objectively reasonable belief by the executing agents that the warrant was valid." *United States v. Cancelmo*, 64 F.3d at 808 (quoting *United States v. Fama*, 758 F.2d at 835). Accordingly, I find that the officers who executed the warrant were reasonable in their reliance upon it and that Crawford's motion to suppress should be denied on this basis as well.

## DECISION AND ORDER

Crawford also seeks disclosure of the identity of, and various other information relating to, the government's confidential informant. (Docket # 22). The disclosure of a

confidential informant's identity is within the sound discretion of the district court. *DiBlasio v. Keane*, 932 F.2d 1038, 1042 (2d Cir. 1991). The government generally is not required to disclose the identity of confidential informants. *Roviaro v. United States*, 353 U.S. 53, 59 (1957). In order to obtain such disclosure, the defendant must show that without it, he "will be deprived of a fair trial." *United States v. Fields*, 113 F.3d 313, 324 (2d Cir.), *cert. denied*, 522 U.S. 976 (1997); *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988) (defendant entitled to identity of confidential informant only upon showing that it is essential or material to the defense), *cert. denied*, 489 U.S. 1089 (1989). A defendant's mere suggestion that disclosure will assist the defense of the case is insufficient. *Fields*, 113 F.3d at 324. "[T]he district court must be satisfied, after balancing the competing interests of the government and the defense, that the defendant's need for disclosure outweighs the government's interest in shielding the informant's identity." *Id.* (citing *Roviaro*, 353 U.S. at 62). Such need is established, according to the Second Circuit, "where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." *United States v. Saa*, 859 F.2d at 1073.

In the instant matter, Crawford contends that the confidential informant is "the only witness in a position to amplify or contradict the testimony of government witnesses." (Docket # 22 at ¶ 18) (quoting *Roviaro*, 353 U.S. at 64). The confidential informant, however, was neither a key witness, nor participant, in the crimes for which Crawford has been indicted. Indeed, Crawford has not been charged with any narcotics offenses related to the controlled

purchases made by the informant.[5] Rather, the Indictment charges Crawford with possession of the narcotics and firearms seized from his residence at 895 Woodbine Avenue, in which he was present at the time of the search. The confidential informant does not appear to have been present during the execution of the warrant, and thus has no apparent first-hand knowledge of the charged offenses.

Accordingly, I find that Crawford's desire to learn the identity of the confidential informant is outweighed by the government's interest in protecting the identity of the informant. *See Fields*, 113 F.3d at 324. Crawford's motion for disclosure of the confidential informant's identity is therefore denied.

### CONCLUSION

For the foregoing reasons, it is my report and recommendation that defendant's motion to suppress tangible evidence seized from 895 Woodbine Avenue **(Docket # 22)** be **DENIED**. It is also my decision and order that defendant's motion for disclosure of the identity of the government's confidential informant **(Docket # 22)** is **DENIED**.

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
January 27, 2006.

---

[5] At oral argument, the government also represented that it does not intend at trial to offer proof of the controlled purchases. Should the government's intention change, Crawford may renew his motion for disclosure of the informant's identity before the district court.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[6]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

                              *s/Marian W. Payson*
                              MARIAN W. PAYSON
                              United States Magistrate Judge

Dated: Rochester, New York
        January  27 , 2006.

---

[6] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).